FILED
U.S. DISTRICT COURT

2008 AUG 25 A 9:38

IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

BY:_____
DEPUTY CLERK

| | |
|---|---|
| ANTHONY WINFREY, <br><br> Plaintiff, | **ORDER DENYING MOTION UNDER 28 U.S.C. 2255** |
| vs. | |
| UNITED STATES OF AMERICA, <br><br> Defendant, | Case No. 2:08-CV-174 DB <br> *Related Case No.* 2:03-CR-241-PGC |

This matter is before the Court on Mr. Anthony Winfrey's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody. Mr. Winfrey claims (1) that his conviction was unlawful because it was based exclusively on his "lying story" contained in the Statement in Advance of Plea, and (2) that his attorney was ineffective for failing to recognize that aside from his "lies" the government had no evidence against him. After considering the parties' briefs and the record in this case, the Court denies Mr. Winfrey's motion.

## BACKGROUND

On April 2, 2003, Anthony Winfrey was indicted by a Federal Grand Jury in the District of Utah for three counts of armed bank robbery; two counts of possessing, using, carrying, or brandishing a firearm during a crime of violence; one count of carjacking; and one count of felon

1

in possession of a firearm. United States v. Anthony Winfrey, Case No. 2:03-CR-241-PGC. The United States filed a Notice of Sentencing Enhancement, indicating that should Mr. Winfrey be convicted of a crime of violence, based on his criminal history, he would be subject to a minimum mandatory life sentence pursuant to 18 U.S.C. § 3559(c)(1). (Criminal Case, Dkt. No. 45.)

The parties engaged in plea negotiations and on January 19, 2007, Mr. Winfrey pled guilty pursuant to a Fed. R. Crim. P. 11(c)(1)(C) agreement to Count V (Brandishing a Firearm During a Crime of Violence) of the Indictment. (Criminal Case, Dkt. No. 56.) In the plea agreement the parties agreed that, pursuant to Rule 11(c)(1)(C), the Court would sentence Mr. Winfrey to 360 months imprisonment. The government agreed to dismiss counts I, II, III, IV, VI and VII of the Indictment, and Mr. Winfrey agreed to "waive any appeal and collateral attacks on his sentence." (Criminal Case, Dkt. No. 56, ¶13.)

At the change of plea hearing, Mr. Winfrey was placed under oath. Thereafter, the Court asked: "Mr. Winfrey, do you understand that you're now under oath and if you were to make a false statement this afternoon that could be held against you in a new prosecution for perjury?" Mr. Winfrey responded, "Yes, big time." (Change of Plea Tr. at 3.) The Court then asked Mr. Winfrey if he understood everything in the Plea agreement to which Mr. Winfrey responded "yes." (Id. at 4.) The plea colloquy went on as follows:

> THE COURT: . . . . This [plea agreement] tells me you're planning to plead guilty to Count V of the Indictment, brandishing a firearm during the commission of a crime of violence. Do you understand that the maximum possible penalty is life in prison, a $250,000 fine, a five-year term of supervised release, restitution to any victims, and a $100 special assessment.
>
> MR. WINFREY: Yes.
>
> THE COURT: Then there are rights specifically described in this document, including the

2

right to trial by jury, to have the assistance of appointed counsel at every stage of the proceeding, to confront witnesses against you, to have your attorney cross-examine them, and to call witnesses on your own behalf. You cannot be forced to incriminate yourself, and you cannot be forced to testify, but you have the right to testify. The government must prove each and every element of the offense against you beyond a reasonable doubt, and the jury would have to be unanimous to convict you, and after any conviction you could appeal. Do you understand that by pleading guilty you'll be giving up all of those rights because we won't have a trial in this case?

MR. WINFREY: Yep.

. . . .

THE COURT: . . . This [agreement] tells me that under Federal Rule of Criminal Procedure 11(c)(1)(C) you are agreeing to a sentence of 360 months in prison. And you understand that if I decide not to impose that sentence, then you could withdraw your plea, but if I say that's a fair sentence, you're going to have to stick with that and that would be the sentence in this case.

MR. WINFREY: Uh-huh (affirmative). Yep.

. . . .

THE COURT: . . . [A]s a part of the Plea Agreement . . . you're agreeing to plead guilty to Count V of the Indictment, to pay full restitution to all the victims in this case, and you're agreeing to waive any appeal or collateral attack on your sentence as outlined in paragraphs 8 and 10; is that true also?

MR. WINFREY: Yes.

(Change of Plea Tr. at 8.)

Later in the plea colloquy the Court said:

THE COURT: Mr. Winfrey, let me phrase it this way, do you understand that if I give you a 30-year sentence and the other things that typically go along with something like that, then you're not going to be able to take any appeals or file any habeas petitions or make any kind of attack on that sentence?

MR. WINFREY: No. We pled guilty, we can't go back and say we're not guilty. Yeah.

. . . .

THE COURT: Any questions about any of those things?

3

>MR. WINFREY: No. I basically know I've dug myself a really, really big ditch throughout my life of not concentrating on good and concentrating on bad, now I've got to pay the fine and got to just do it.
>
>THE COURT: Would you like to sign the Plea Agreement at this time? And by signing – would you like to sign the Plea Agreement at this time, and by signing you're indicating that you've read everything in there and understand everything and that everything in there is true.
>
>MR. WINFREY: Yes. He is an excellent attorney.
>
>. . . .
>
>THE COURT: Are you fully satisfied with the representation of your attorney, Mr. Sisneros?
>
>MR. WINFREY: Extremely satisfied, he's extremely attentive and does what he says.

(Change of Plea Tr. at 11-12.)

>The Court asked Mr. Winfrey one last time:
>
>THE COURT: All right. Now, sir, one last thing on the sentencing issue, you understand that I'm going to end up giving you a 30-year sentence here and that's what you're agreeing to; do you understand that?
>
>MR. WINFREY: Yes.
>
>THE COURT: One last question, you could have a trial on these charges, if you wanted a trial, or you could move forward with the guilty plea, which would you like to do?
>
>MR. WINFREY: Guilty plea.

(Change of Plea Tr. at 13-14.)

On March 6, 2007, Mr. Winfrey was sentenced without objection to 30-years imprisonment in accord with the plea agreement. (Criminal Case, Dkt. Nos. 57 & 58.) Mr. Winfrey did not file a direct appeal, but on March 5, 2008, despite the waiver provision in his plea agreement, Mr. Winfrey moved to vacate his sentence under 28 U.S.C. § 2255. In his § 2255 motion, Mr. Winfrey claims that he was "convicted with no physical proof . . . only my

lying story." (Pet.'s Mot. at 5.) Mr. Winfrey also claims that his lawyer was ineffective because he should have known that the government had "NO physical evidence, eye witnesses, etc., to convict me of my lying story." (Id. at 6.)

## DISCUSSION

"A defendant's knowing and voluntary waiver of the statutory right to appeal and to collaterally attack his sentence is generally enforceable." United States v. Chavez-Salais, 337 F.3d 1170, 1172 (10th Cir. 2003); United States v. Cockerham, 237 F.3d 1179, 1181 (10th Cir. 2001), cert. denied, 534 U.S. 1085 (2002). The Court applies a three-pronged analysis to evaluate the enforceability of such a waiver: (1) whether the disputed issue falls within the scope of the waiver; (2) whether defendant knowingly and voluntarily waived his rights; and (3) whether enforcing the waiver would result in a miscarriage of justice. United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc).

1.  Scope of the Waiver

To determine whether the disputed issue falls within the scope of the waiver, the Court begins with the plain language of the plea agreement. Hahn, 359 F.3d at 1328. The Court construes the plea agreement according to contract principles and based on what defendant reasonably understood when he entered his plea. United States v. Arevalo-Jimenez, 372 F.3d 1204, 1206 (10th Cir. 2004). The Court strictly construes the waiver and resolves any ambiguities against the government and in favor of defendant. Hahn, 359 F.3d at 1343.

With these principles in mind, the Court finds that the scope of the waiver in this case unambiguously includes the right to collaterally attack by a § 2255 motion any matter in connection with Mr. Winfrey's sentence. The plea agreement explicitly provides: "I . . . expressly waive my right to challenge my sentence, and the manner in which the sentence is

determined, in any collateral review motion, writ or other procedure, including but not limited to a motion brought under Title 28, United States Code, Section 2255." (Criminal Case, Dkt. No. 56, ¶10.) Moreover, at the plea colloquy the Court repeatedly discussed the waiver provision and specifically explained that Mr. Winfrey would not be able to "file any habeas petitions" or "make any kind of attack" on his sentence. (Plea Hearing Tr. at 8, 11-12.) Given these facts, the Court finds that the plain language of the agreement precludes the collateral attack presented in this case.

2. <u>Knowing and Voluntary Nature of the Plea</u>

Next, to determine whether Mr. Winfrey knowingly and voluntarily waived his rights, the Court evaluates the language of the plea agreement and the Rule 11 colloquy. <u>Hahn</u>, 359 F.3d at 1325. The written plea agreement explicitly provides that Mr. Winfrey "knowingly, voluntarily and expressly waive[d]" his right to bring a motion under § 2255. (Criminal Case, Dkt. No. 56, ¶10.) In addition, the last page of the written plea agreement acknowledges that Mr. Winfrey had sufficient time to discuss the matter with his attorney, that he was satisfied with his attorney's representation, and that he had read and understood the plea agreement. (<u>Id.</u> at 8.) Similarly, the Court conducted a thorough inquiry at the plea hearing. At that time, Mr. Winfrey affirmed that he understood the charge against him, the maximum penalties, the rights he was waiving and the factual basis for the plea. Mr. Winfrey explicitly acknowledged that his plea was voluntary and that no one forced or threatened him to enter it. Based on the foregoing, the Court finds there is nothing in the record to suggest that Mr. Winfrey's plea or waiver of post-conviction rights was unknowing or involuntary.

3. <u>Miscarriage of Justice</u>

Finally, the Court must determine whether enforcing the waiver will result in a

miscarriage of justice. Hahn, 359 F.3d at 1327. The Tenth Circuit has identified four such occasions: "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." Id. Mr. Winfrey bears the burden of demonstrating that the waiver results in a miscarriage of justice. United States v. Anderson, 374 F.3d 955, 959 (10th Cir. 2004).

Mr. Winfrey has not alleged any facts that would implicate factors one, three and four. He has, however, alleged ineffective assistance of counsel. See also Cockerham, 237 F.3d at 1187 (providing waiver is enforceable absent a claim that the petitioner received ineffective assistance of counsel in the negotiation of the plea or the waiver). To show ineffective assistance of counsel, Mr. Winfrey must demonstrate (1) that the performance of counsel was deficient, and (2) a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694 (1984).

Mr. Winfrey's ineffective assistance of counsel claim is based on his assertion that counsel was ineffective for failing to recognize that the government had insufficient evidence to support a conviction. (Pet.'s Mot. at 6 ("My lawyer should have realized . . . that the prosecuting attorney had/has NO physical evidence, eye witnesses, etc., to convict me of my lying story.").) Defendant's argument is unsupported by the record.

Mr. Winfrey pled guilty to Count V of the Indictment (brandishing a firearm during a crime of violence) which specifically addressed the October 17, 2002 armed bank robbery of Washington Mutual Bank, located in Murray, Utah. The police reports of the incident indicate that on the date in question, a lone male robber, described as 5'5" to 5'8", with dark hair and eyes, wearing a white painter's dust mask, entered the bank at approximately 9:45 a.m. with a firearm

7

in his hand and approached two tellers working behind the counter. According to the report, the robber said, "This is a robbery. Take the money out of your drawers." The robber tapped the gun on the counter to show it was real. The robber then asked if there was money in the safe in the back of the bank. One of the tellers responded in the negative. The robber said: "I want everything out of both of your drawers," and reminded the tellers that "I'm ready to use this . . . and I'm ready to hurt someone," referring to the firearm. The tellers placed $21,321 into a white grocery bag and gave it to the robber. The robber then left the bank driving a two-tone green Ford pick-up truck, which matched the description of a vehicle that had been carjacked just prior to the robbery. (Govt's Opp'n, Exh. 1.)

On November 29, 2002, following an armed bank robbery at a Key Bank in Salt Lake City, Utah, the police pursued and arrested Mr. Winfrey. During a post-<u>Miranda</u> interview that same day, Mr. Winfrey admitted to the Key Bank robbery that occurred earlier that day, as well as the October 17, 2002 Washington Mutual Bank robbery and carjacking. During that interview, Mr. Winfrey provided numerous and specific details about the Washington Mutual Bank robbery. Among other things, Mr. Winfrey identified how and where he carjacked the pickup truck; the amount of money he obtained; the type of mask he was wearing; and the gun used during the course of the robbery. These details were consistent with the physical evidence, witness statements and police reports obtained in investigating this case, and could only have been known by someone who had been present during the robbery and carjacking.

These were the same facts that formed the basis for Mr. Winfrey's Statement in Advance of Plea and Rule 11(c)(1)(C) agreement. Accordingly, the Court finds that not only was there evidence in addition to the facts admitted by Mr. Winfrey in his Statement in Advance of Plea, but also, given the corroborative nature of Mr. Winfrey's post-arrest interview, it is disingenuous

for him to claim that his guilty plea was based exclusively on his own lies. Finally, counsel for Mr. Winfrey expressly represented to the Court that he had considered the available evidence and believed that "the government [had] quite a strong factual case against [Mr. Winfrey]." (Plea Hearing Tr. at 12.) And, it was for this very reason that Mr. Winfrey, his counsel and his mother "thought that it might be in [Mr. Winfrey's] best interest to pursue a plea resolution." (Id.) In light of these facts, the Court finds there is nothing to suggest that Mr. Winfrey's counsel was deficient in any manner.

## CONCLUSION

Having found no ineffective assistance of counsel, the Court likewise concludes there was no miscarriage of justice and no reason to set aside Mr. Winfrey's knowing and voluntary waiver of his right to collaterally attack his sentence. See Hahn, 359 F.3d at 1328. Accordingly, Mr. Winfrey's § 2255 motion is denied.

IT IS SO ORDERED.

Dated this 25th day of August, 2008.

_____
Dee Benson
United States District Court Judge